NEEL CHATTERJEE (SBN 173985)
*NChatterjee@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA  94063
Tel. +1 650 752 3100
Fax: +1 650 853 1038

SHARON R. SMITH, (SBN 221428)
*SharonSmith@goodwinlaw.com*
MEGAN D. BETTLES (SBN 328161)
*MBettles@goodwinlaw.com*
**GOODWIN PROCTER LLP**
Three Embarcadero Center, Suite 2800
San Francisco, CA  94111
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendants
PASSES, INC. and LUCY GUO

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FAMOUS BIRTHDAYS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PASSES, INC., a Delaware corporation; and LUCY GUO, an individual,<br><br>Defendants. | Case No. 2:24-cv-08364-CBM-SSC<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:         December 3, 2024<br>Time:        10:00 a.m.<br>Ctrm.:       8-D<br>Judge:       Hon. Consuelo B. Marshall<br><br>Action Filed:      September 27, 2024 |

Goodwin Procter LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

I.    Introduction ........................................................................................................ 1

II.   Statement of Facts ............................................................................................. 2

    A. Passes and Famous Birthdays Are Very Different Companies With Very
Different Competitors ...................................................................................... 2

    B. The Services Agreement .................................................................................. 3

    C. The Parties Implement the Famous Birthdays API to Allow Passes to Access
the Famous Birthdays' Subscription Service .................................................. 4

    D. Passes' Use of Famous Birthdays Pro's Services .......................................... 4

    E. The Motion for a Preliminary Injunction ....................................................... 6

III.  Legal Standard .................................................................................................. 7

IV.   Argument ........................................................................................................... 7

    A. Plaintiff Cannot Establish Irreparable Harm .................................................. 7

        1.   Plaintiff's Delay Undercuts Its Assertion of Injury ................................. 8

        2.   Plaintiff Fails to Provide Any Evidence of a Likelihood of Irreparable
Harm ......................................................................................................... 9

        3.   Plaintiff Fails to Show Damages Are An Inadequate Remedy ................. 9

    B. Plaintiff is Not Likely to Succeed on the Merits of Its Claims ..................... 10

        1.   Plaintiff Will Not Prevail on the Merits of Its CFAA (CDAFA) Claim .... 10

        2.   Plaintiff Will Not Prevail on the Merits of Its Copyright Claim ............... 16

        3.   Plaintiff is Unlikely to Prevail on the Merits of Its UCL Claim ............... 19

    C. Passes' Voluntary Cessation Renders an Injunction Unnecessary and the
Motion moot .................................................................................................. 19

    D. The Balance of Hardships Does Not Tip In Plaintiff's Favor ........................ 20

    E. A Preliminary Injunction Is Not In The Public Interest ................................. 21

    F. Plaintiff's Requested Relief Is Not Narrowly Tailored and Is Therefore
Impermissible ................................................................................................ 21

V.    Conclusion ...................................................................................................... 22

Goodwin Procter LLP
ATTORNEYS AT LAW

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*,
  672 F.Supp.3d 1035 (S.D. Cal. 2023) ......................................................17, 18, 19

*Amoco Prod. Co. v. Vill. of Gambell*,
  480 U.S. 531 (1987) .......................................................................................20

*Arenas v. Shed Media U.S. Inc.*,
  881 F.Supp.2d 1181 (C.D. Cal.)......................................................................21

*Arenas v. Shed Media US, Inc.*,
  462 F. App'x 709 (9th Cir. 2011)....................................................................21

*In re Carrier IQ, Inc.*,
  78 F.Supp.3d 1051 (N.D. Cal. 2015)...............................................................12

*Cause & FX Ltd. v. Saban Films, LLC*,
  2021 WL 6104414 (C.D. Cal. Nov. 10, 2021) ....................................8, 9, 10, 21

*Cavalier v. Random House, Inc.*,
  297 F. 3d 815 (9th Cir. 2002) .........................................................................17

*Cottle v. Plaid Inc.*,
  536 F.Supp.3d 461 (N.D. Cal. 2021) ...............................................................12

*Custom Packaging Supply, Inc. v. Phillips*,
  2015 WL 8334793 (C.D. Cal. Dec. 7, 2015)....................................................10

*Dahl v. HEM Pharms. Corp.*,
  7 F.3d 1399 (9th Cir. 1993) ..............................................................................7

*David v. CBS Interactive Inc.*,
  2013 WL 12128804 (C.D. Cal. Feb. 19, 2013).................................................20

*DealDash Oyj v. ContextLogic Inc.*,
  2018 WL 3820654 (N.D. Cal. Aug. 10, 2018)..................................................20

*Doe v. Meta Platforms, Inc.*,
  690 F.Supp.3d 1064 (N.D. Cal. 2023)..............................................................12

*Eldred v. Ashcroft,*
    537 U.S. 186 (2003) ........................................................................ 17

*Experian Information Solutions, Inc. v. Nationwide Marketing Servs. Inc.,*
    893 F.3d 1176 (C.A.9 2018)........................................................ 18, 19

*Facebook, Inc. v. Power Ventures, Inc.,*
    844 F.Supp.2d 1025 (N.D. Cal 2012) rev'd in part on other
    grounds, 844 F.3d 1058 (9th Cir. 2016)............................................ 12

*Famous Birthdays, LLC v. SocialEdge, Inc.,*
    2022 WL 1592726 (C.D. Cal. Feb. 11, 2022)...................................8, 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
    499 U.S. 340 (1991) ....................................................16, 17, 18, 19

*Flextronics Int'l, Ltd. v. Parametric Tech. Corp.,*
    2014 WL 2213910 (N.D. Cal. May 28, 2014) .................................... 15

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ........................................................................ 19

*Funky Films, Inc. v. Time Warner Entertainment, Inc.,*
    462 F. 3d 1072 (9th Cir 2006) ......................................................... 16

*Garcia v. Google, Inc.,*
    786 F.3d 733 (9th Cir. 2015) ............................................................. 7

*Google LLC v. Oracle Am., Inc.,*
    593 U.S. 1 (2021) ............................................................................ 18

*Gray v. Hudson,*
    28 F.4th 87 (9th Cir. 2022) .............................................................. 16

*Greg Young Publ'g, Inc. v. Zazzle, Inc.,*
    2018 WL 836276 (C.D. Cal. Feb. 8, 2018) ........................................ 22

*Greg Young Publ'g, Inc. v. Zazzle, Inc.,*
    2020 WL 3871451 (C.D. Cal. July 9, 2020), *aff'd* 2021 WL
    3702005 (9th Cir. Aug. 20, 2021) .................................................... 20

*Idema v. Dreamworks, Inc.,*
    162 F.Supp.2d 1129 (C.D. Cal. 2001)............................................... 18

*In re iPhone Application Litig.*,
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011)....................................15

*Karmo v. Morgan Creek Ent. Grp.*,
  2019 WL 3059463 (C.D. Cal. Apr. 12, 2019)........................................9

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma. GmbH & Co.*,
  571 F.3d 873 (9th Cir. 2009).........................................................7, 8

*McGowan v. Weinstein*,
  505 F.Supp.3d 1000 (C.D. Cal. 2020)..............................................14

*In re Meta Healthcare Pixel Litig.*,
  713 F.Supp.3d 650 (N.D. Cal. 2024)................................................15

*Miller for and On Behalf of N.L.R.B. v. California Pac. Med. Ctr.*,
  991 F.2d 536 (9th Cir. 2001)...........................................................9

*Nowak v. Xapo, Inc.*,
  2020 WL 6822888 (N.D. Cal. Nov. 20, 2020)....................................11

*Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*,
  762 F.2d 1374 (9th Cir. 1985).........................................................9

*Oracle Am., Inc. v. Serv. Key, LLC*
  2012 WL 6019580 (N.D. Cal. Dec. 3, 2012) .....................................10

*Perkins v. LinkedIn Corp.*,
  53 F.Supp.3d 1190 (N.D. Cal. 2014).................................................11

*Prestige Trans., Inc. v. U.S. Small Bus. Admin.*,
  850 F. App'x 551 (9th Cir. 2021)......................................................8

*Price v. City of Stockton*,
  390 F.3d 1105 (9th Cir. 2004).........................................................22

*Sammartano v. First Judicial District Court*,
  303 F.3d 959 (9th Cir. 2002)..........................................................21

*Sampson v. Murray* (1974)
  415 US 61 (1974) ..........................................................................10

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003)......................................................17, 18

Goodwin Procter LLP
ATTORNEYS AT LAW

*So v. HP, Inc.*,
  2023 WL 4596778 (N.D. Cal. July 17, 2023) ..................................................... 11

*Sony Pictures Ent., Inc. v. Fireworks Ent. Grp., Inc.*,
  137 F.Supp.2d 1177 (C.D. Cal. 2001) ............................................................... 17

*Stanley v. Univ. of S. Cal.*,
  13 F.3d 1313 (9th Cir. 1994) ............................................................................... 7

*Sunbelt Rentals, Inc. v. Victor*,
  43 F.Supp.3d 1026 (N.D Cal. 2014) .................................................................. 12

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
  313 F.Supp.3d 1056 (N.D. Cal. 2018) ............................................................... 15

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
  315 F.Supp.3d 1147 (C.D. Cal. 2018) ............................................................... 14

*Winter v. Nat. Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ................................................................................................. 7

**California Cases**

*Cel–Tech Comms. Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal.4th 163 (1999) ........................................................................................ 19

**California Statutes**

Bus. & Prof. § 17200 ........................................................................................... 19

Comprehensive Data Access and Fraud Act ................................................... *passim*

Penal Code § 502(c)(8) ............................................................................. 10, 11, 15

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................................................................................... 10, 11

Fed. R. Civ. P. 65(d) ............................................................................................ 22

Goodwin Procter LLP
Attorneys at Law

Defendant Passes, Inc. ("Passes") respectfully requests that this Court deny Plaintiff Famous Birthdays, LLC's ("Famous Birthdays") Motion for Preliminary Injunction (Dkt. 11, the "Motion").

## I.    INTRODUCTION

Defendant Passes is a social platform that allows users to access content, join exclusive members-only communities, purchase and sell digital and tangible merchandise and collectibles, and interact with other members.  Passes utilized Plaintiff Famous Birthdays' publicly available website and then through a "Pro" subscription service agreement to identify content creators to join Passes platform and to provide popularity information to its own members.   Passes uses of the Famous Birthdays' website and Pro service were authorized and known to Famous Birthdays for six months before it filed its Motion for Preliminary Injunction ("Motion").   Famous Birthdays' lengthy delay, alone, provides the Court with sufficient grounds to deny the Motion.

Famous Birthdays Motion seeking a vague and impractical injunction to enforce also fails for several other independent grounds.  Passes paid $5,000 per month for Famous Birthdays' subscription service so available monetary damages belie any irreparable injury.

Famous Birthdays also is not likely to succeed on the merits of claims under the California Comprehensive Data Access and Fraud Act (the "Act" or "CDAFA"), for copyright infringement, or pursuant to the UCL.

First, the Act is inapposite here because its purpose is as an "anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." Here, Famous Birthdays authorized all of Passes' activities. There also can be no likelihood of success on the merits of a violation of the Act because Famous Birthdays failed to establish with any admissible evidence that it suffered damage or loss as a result of the alleged violation or included any "contaminant" harming Famous Birthdays' website or data.

Second, Famous Birthdays' copyright claim fails for numerous independent reasons including that its allegedly "copyrighted" biographies are facts that are not protected by copyright law, Passes had a contractual right to access the Famous Birthdays biographies, and the biographies of each party are sufficiently different as to any arguable copyrightable expression.

Third, because Famous Birthdays' UCL claim is predicated on the same conduct as its defective and failed copyright and CDAFA claims, Famous Birthdays' UCL claim fails as well.

Last, Passes has removed the disputed Passes biographies from public view without an intent to resume public issue. Thus, the injunction is moot and unnecessary.

As to the other preliminary injunction factors, Passes also establishes that the balance of hardships favors Passes and not Famous Birthdays. There is no hardship on Plaintiffs to denying its delayed Motion, as its biographies consist of factual information that is unprotectable and readily available from numerous other factual sources such as Wikipedia.  Nor is a preliminary injunction in the public interest because here is no public interest in enjoining the use of public factual information. In fact, the First Amendment, protects the public's right to access and speak about factual information concerning public figures.  Moreover, the proposed injunction is so broad as to be unenforceable and impractical.

For each of these reasons, the Court should deny the Motion.

## II.    STATEMENT OF FACTS

### A.    Passes and Famous Birthdays Are Very Different Companies With Very Different Competitors

Passes is a social content platform that helps content creators do what they do best—create content, such as music, video, or messages. Passes also offers exclusive members-only communities, the sale of digital and tangible merchandise and collectibles, and interactions with other members.  Passes used factual information

about celebrities and content creators ("Public Figures") to generate interest in using the Passes platform. Passes also created the Passes Wiki biography pages using factual information about the Public Figures, such as biographical information, social media handles, birthdates, places of birth, and astrological signs.  Zhang Decl., ¶3. Passes Wiki—no longer available to the public—was used to attract visitors to the platform to entice them to generate content using the Passes platform. When Famous Birthdays complained about Passes' use of celebrity facts, Passes pulled Passes Wiki from public view.  Guo Decl., ¶14; Zhang Decl., ¶¶ 18-19.

Famous Birthdays, on the other hand, is akin to an encyclopedia of celebrity and social media influencer factual biographies. Famous Birthdays displays facts for free on its website and offers a paid subscription service to its users who can then profile and use information about celebrities.  Britton Decl., Ex. F at § 1.

## B.    The Services Agreement

On or about February 26, 2024, former Passes employee Connor Sweeney contacted a Famous Birthdays executive, a social acquaintance, Passes executive, Zach Ferraro, to discuss a deal between Passes and Famous Birthdays wherein Passes would use Famous Birthdays Pro services in exchange for a fee.  Sweeney Decl., ¶¶3, 4. The Famous Birthdays Pro service is available by paid subscription and offers additional metrics about the celebrities and influencers, including relative popularity on the Internet—or so called "rank."

Later on February 28, 2024, Famous Birthdays emailed a copy of Famous Birthdays' form services agreement for the "Premiere tier," subscription, which cost $5,000 per month.  Sweeney Decl., ¶4.  The parties made very few, if any, modifications before the agreement was finalized.  Sweeney Decl., ¶4.  On February 29, 2024, Passes executed the services agreement (the "Services Agreement"). Sweeney Decl., ¶6, Ex. A.

**C.    The Parties Implement the Famous Birthdays API to Allow Passes to Access the Famous Birthdays' Subscription Service**

After the agreement was executed, Famous Birthdays offered to assist with implementation of the API to Passes' system because they knew that it was how Passes wanted to use it.  An API (Application Programming Interface) is a way for different software applications to communicate and work together by sharing data and functionality. Jakobsson Decl., ¶22.  Here, Passes utilized the Famous Birthdays' API sent to Passes to access the Famous Birthdays subscription  service.  In this regard, Famous Birthdays then facilitated a call between Passes and Famous Birthdays to get Passes API access.

On or about March 5, 2024, Evan Britton (the CEO of Famous Birthdays), met with Passes CEO, Ms. Guo.  Guo Decl., ¶3.  On that call, Mr. Britton demonstrated many of the features and functionality of Famous Birthdays' Pro service to Ms. Guo. Guo Decl., ¶3.  Ms. Guo's communications with Mr. Britton were very limited and focused on the functionality of the Famous Birthdays Pro service. Guo Decl., ¶2.

Following the March 5th meeting, Famous Birthdays gave Passes information and login credentials so that it could use Famous Birthdays' Pro services.  Sweeney Decl., ¶6.

On or about April 5, 2024, Famous Birthdays forwarded to Passes the February 28th email, which was sent to Passes' Chief Technology Officer ("CTO"), Mr. Zhang who discovered it had attached API documentation and a Passes' token for accessing the Famous Birthdays Pro service.   Zhang Decl., ¶5, Ex. A.

**D.    Passes' Use of Famous Birthdays Pro's Services**

Passes subscribed to the Famous Birthdays Pro service, in part, to view the "rank" of celebrities and influencers on Famous Birthdays' site. In order to do so, Passes used the "rank graph API endpoint" through Famous Birthdays login credentials provided to Passes.  Zhang Decl., ¶12.  APIs are commonly used to enable one service to access other services. To access the rank graph API endpoint, Famous

Birthdays did not require Passes to provide further credentials.  Zhang Decl., ¶12. Further, there were no indications to Passes that the rank graph API endpoint was "internal" or only meant for use by Famous Birthdays personnel.  Zhang Decl., ¶12; Jakobsson Decl., ¶32.

Additionally, Famous Birthdays did not place a limit on Passes' use of the rank graph API endpoint.  Zhang Decl., ¶13; *see also* Ostrowski Decl., ¶24.  Passes did not receive notice of any limits upon accessing the rank graph API endpoint.  Zhang Decl., ¶13.

Passes was authorized and able to call the rank graph API endpoint by using the login credentials that Famous Birthdays provided to Passes.  To access the rank graph API endpoint, I understand that Famous Birthdays did not require Passes to provide further credentials.  From my investigation, I also understand there were no indications to Passes that the rank graph API endpoint was "internal" or only meant for use by Famous Birthdays personnel as it was accessible with the login credentials provided by Famous Birthdays. It is noted that ChatGPT is a generative artificial intelligence (AI) chatbot. The ChatGPT program can generate human-like conversational responses, and enables users to refine and steer a conversation towards a desired length, format, style, level of detail, and language. *See* Wikipedia, ChatGPT.

In using the Famous Birthdays' site and Pro service, no one at Passes accessed, altered, or otherwise introduced anything that would alter Famous Birthdays' source code.  *See* Jakobsson Decl., ¶39; Guo Decl., ¶5; Zhang Decl., ¶6.  Nor was anyone instructed to do so.  Guo Decl., ¶5; Zhang Decl., ¶6.

No one at Passes accessed or extracted anything from Famous Birthdays' source code.  *See* Jakobsson Decl., ¶23; Guo Decl., ¶6; Zhang Decl., ¶7.  Nor was anyone instructed to do so.  *See* Guo Decl., ¶6; Zhang Decl., ¶7.

No one at Passes accessed or used the Famous Birthdays Pro services through any method other than credentials that were provided by Famous Birthdays to Passes.

*See* Jakobsson Decl., ¶46;Guo Decl., ¶7; Zhang Decl., ¶8.  Nor was anyone instructed
to do so.  *See* Guo Decl., ¶7; Zhang Decl., ¶8.

No one at Passes used the Famous Birthdays Pro API calls in any way to
"hack[]" the Famous Birthdays Pro's source code.  *See* Jakobsson Decl., ¶35;Guo
Decl., ¶8; Zhang Decl., ¶9.  Nor was anyone instructed to do so.  *See* Guo Decl., ¶8;
Zhang Decl., ¶9.  Indeed, any such action would be a serious transgression of Passes'
policies.  *Id.*

### E.    The Motion for a Preliminary Injunction

On September 27, 2024, Passes initiated this litigation.  Dkt. 1.  On Saturday,
October 19, 2024, at 12:00 P.M. Pacific Time, counsel for Passes emailed counsel for
Famous Birthdays, noting that  "[a]s a showing of good faith, Passes is going to take-
down the biography pages at-issue." Bettles Decl., ¶4.  Later that day, Famous
Birthdays filed the present Motion. Dkts. 9 to 11.

On or about October 25, 2024, Passes removed the Passes Wiki biography
pages from public view, which means that the links to each biography page no longer
appears when a member of the public attempts to search for the Passes Wiki
biography.  Guo Decl., ¶¶11, 12; Zhang Decl., ¶19.  Neither Passes nor Ms. Guo has
any intent to instruct the Passes engineering team to have the Passes Wiki biography
pages return to public view.  Guo Decl., ¶13.

On November 1, 2024, Passes sent Famous Birthdays a letter requesting
certain documents that were referenced (but not provided) in the Motion and
supporting declarations, so that Passes could address those documents in its
Opposition (the "Document Request Letter").  *See* Bettles Decl., ¶7, Ex. C.  The
Document Request Letter asked Famous Birthdays to provide copies of the
documents by November 8, 2024 at 5:00 P.M. Pacific Time.  Bettles Decl., Ex. C.
Counsel for Famous Birthdays did not respond to the Document Request Letter and
has not produced any documents, including the copyright registrations for the works
Famous Birthdays claim are infringed.  Bettles Decl., ¶8.

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

Famous Birthdays' claims that Passes used malicious computer programs and unauthorized access to achieve Passes creation of the Passes Wiki biographies will not succeed on the merits. As evidenced herein, at all times Passes acted with the knowledge and approval of Famous Birthdays to access its system to create the Passes Wiki biography pages.

## III.  LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A party seeking a preliminary injunction must make a "clear showing" of each of the following elements: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) an advancement of the public interest. *See id*. at pp. 20, 22. Where, as here, a Plaintiff seeks a mandatory injunction, the burden is "double demanding" on the party seeking the injunction. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Because a mandatory injunction "goes well beyond simply maintaining the status quo pendent lite [it] is particularly disfavored," *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (citations omitted), district courts should deny such relief "unless the facts and law clearly favor the moving party." *Dahl v. HEM Pharms. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993). "In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma. GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (quotation marks and citation omitted).

## IV.  ARGUMENT

### A.  Plaintiff Cannot Establish Irreparable Harm

To justify its claim for a mandatory injunction, Plaintiff must show "extreme or very serious damage will result" without one. *Marlyn Nutraceuticals*, 571 F.3d at

879.   Plaintiff's recent motion for a preliminary injunction against a different defendant, SocialEdge, based on similar allegations to those made against Defendant here, underscores the lack of any credible claim of irreparable harm. *See Famous Birthdays, LLC v. SocialEdge, Inc.*, 2022 WL 1592726, at *4 (C.D. Cal. Feb. 11, 2022). Plaintiff's prior motion highlights the inconsistency and weakness of Plaintiff's assertions in this case.

In that case, Plaintiff brought claims for copyright infringement, violations of California's Comprehensive Computer Data Access and Fraud Act, and the Unfair Competition Law, alleging that the defendant had allegedly used Plaintiff's data without permission. *Id.* at 2. The court denied Plaintiff's motion for a preliminary injunction, finding that Plaintiff did not demonstrate a likelihood of irreparable harm. *Id.* at 4.  The court emphasized that Plaintiff's delay in seeking injunctive relief undermined its claims of urgency and further determined that Plaintiff made an "insufficient showing" of irreparable harm to its business interests. *Id.*

Here, Plaintiff has also not met its burden for several similar reasons.

### 1.    Plaintiff's Delay Undercuts Its Assertion of Injury

Plaintiff's six month's delay in seeking a preliminary injunction undermines its claim of injury. *See Cause & FX Ltd. v. Saban Films, LLC*, 2021 WL 6104414 at *3 (C.D. Cal. Nov. 10, 2021) (Plaintiff's four month delay in seeking an injunction "belie[d] the supposed harm."); *Prestige Trans., Inc. v. U.S. Small Bus. Admin.*, 850 F. App'x 551 (9th Cir. 2021) (two-month delay "undercuts Plaintiffs' claim of irreparable harm.") (internal quote omitted).

Plaintiff admits it has known of the alleged injury since at least April 14 and 20, 2024.  Compl. ¶38; Motion at 12:17-18.  This extraordinary delay demonstrates that Plaintiff is unlikely to suffer irreparable harm.  "A long delay in seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Miller for and On Behalf of N.L.R.B. v. California Pac. Med. Ctr.*, 991 F.2d 536 (9th Cir. 2001); *see also Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th

Cir. 1985). Indeed, the court in Plaintiff's motion against SocialEdge noted "Famous Birthdays waited five months to file this Motion after its apparent investigation. This delay alone warrants denial of Famous Birthdays' Motion." *Famous Birthdays, LLC v. SocialEdge, Inc.*, 2022 WL 1592726, at *4 (C.D. Cal. Feb. 11, 2022).

### 2. Plaintiff Fails to Provide Any Evidence of a Likelihood of Irreparable Harm

Like in it's prior motion against SocialEdge, Plaintiff here has failed to demonstrate a likelihood of irreparable harm in the absence of preliminary relief. Plaintiff's harm comes in two forms: (1) copying and reproduction of its copyrighted works, and (2) "unquantifiable consumer confusion" that "divert[s] hundreds of thousands of visitors away…while also hindering [Plaintiff's search engine views]." Motion at  Notably, Plaintiff does not provide any evidence of the harm, such as lost revenue, reputational harm, or loss of market share.

Plaintiff's "unwarranted conclusions" with limited evidence fails to establish likely irreparable harm. *Famous Birthdays, LLC v. SocialEdge, Inc.*, 2022 WL 1592726, at *4 (C.D. Cal. Feb. 11, 2022).

### 3. Plaintiff Fails to Show Damages Are An Inadequate Remedy

Plaintiff has failed to show that damages are an inadequate remedy. *Cause & FX Ltd. v. Saban Films, LLC*, 2021 WL 6104414 at *3 (C.D. Cal. Nov. 10, 2021). Harm that can be remedied with financial compensation is, by definition, not irreparable. *Karmo v. Morgan Creek Ent. Grp.*, 2019 WL 3059463, at *8 (C.D. Cal. Apr. 12, 2019) ("Plaintiff has not satisfied the irreparable harm element of the *Winter* test. Plaintiff cites only financial harm [which] does not justify injunctive relief."). In *Cause & FX Ltd.*, the Court found that the crux of Plaintiff's claim was that it was not paid for its work, and thus, it is just a contractual dispute.  Therefore, "Plaintiff has not shown that damages are an inadequate remedy for Plaintiff's putative injuries." *Id*.

Like *Cause & FX Ltd.*, here, the crux of Plaintiff's story is that "Passes abused

its [contractual] limited access to Famous Birthdays' data." Plaintiff's own submission underscores that the terms of the contract, which describe Plaintiff's services in consideration for a payment of $5,000 per month, are "reparable" by monetary damages. *Sampson v. Murray* (1974) 415 US 61, 90 (1974) (that adequate compensatory damages will ultimately be available in the ordinary course of litigation weighs heavily against a claim of irreparable harm). For this reason alone, its Motion should be denied.

### B.  Plaintiff is Not Likely to Succeed on the Merits of Its Claims

#### 1.  Plaintiff Will Not Prevail on the Merits of Its CFAA (CDAFA) Claim

Passes did not violate any provision of the California Comprehensive Data Access and Fraud Act (CDAFA) no. CDAFA's purpose is as an "anti-hacking statute intended to prohibit the unauthorized use of any computer system for improper or illegitimate purpose." *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015).  This case is unrelated to hacking.  There is no source code at issue. Zhang Decl., ¶¶6-7, 9-10; Jakobsson Decl., ¶¶3, 23, 25-27, 34-35, 37-39, 47. Plaintiff's attempt to force-fit their CDAFA claims  here fails for numerous reasons.

##### a.  Plaintiff's § 502 claims fail to meet applicable pleading requirements

Each and every one of Plaintiff's § 502 claims sounds in fraud and must be dismissed due to Plaintiff's failure to satisfy Rule 9(b)'s particularity requirement. *Oracle Am., Inc. v. Serv. Key, LLC* 2012 WL 6019580, at *7 (N.D. Cal. Dec. 3, 2012)( "Rule 9(b) applies not only to fraud claims, but also to claims that are 'grounded in fraud' or 'sound in fraud.'"); *see also Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *5 (N.D. Cal. Nov. 20, 2020) ("[B]ecause Plaintiff's CDAFA claim 'sound[s] in fraud,' it is subject to Rule 9(b) pleading standards.").

Here, Plaintiff alleges that Passes "used the illegally obtained data for the illicit purpose of creating a competing product on the web." Compl. ¶40. To support its allegations, Plaintiff provides conclusory statements that Passes "broke into Famous Birthdays' internal source code, and pulled a proprietary API call." Motion at 9:16-17; *see also* Ostrowski Decl. ¶26, 27, 29, 35. These CDAFA claims are based on a flawed and misleading premise. Indeed, any person even somewhat "sophisticated in computer science" would know that making an API call and gathering data is not the same as accessing source code. *See* Ostrowski Decl. ¶26. Moreover, Passes' subscription and Plaintiff's documentation to Passes provided it with authorization to make an API call on Famous Birthdays' site, which renders false its allegation that Passes abused an API call that was "proprietary" to Plaintiff. Plaintiff has failed to provide evidence sufficient to demonstrate a likelihood of success that Passes violated this provision.

### b.   Plaintiff did not suffer an injury nor did Plaintiff adequately establish injury

Plaintiff fails to adduce evidence that it suffered damage or loss as a result of Passes' purported violation of Section 502(c). *So v. HP, Inc.*, 2023 WL 4596778, at *11 (N.D. Cal. July 17, 2023)(citations omitted). *Perkins v. LinkedIn Corp.*, 53 F.Supp.3d 1190, 1219 (N.D. Cal. 2014) (requiring plaintiffs to plead that they "have suffered [ ] tangible harm from the alleged Section 502 violations.") Based on self-serving declarations, Plaintiff alleges that its market position would be stronger but for the Passes' actions, that its search engine optimization ("SEO") was adversely affected, and that Passes allegedly diverted to its platform hundreds of users per month. Compl. ¶¶116-118. These injuries are speculative at best, and the alleged damages resulting from speculative injuries are not contemplated under the CDAFA. *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1082 (N.D. Cal. 2023); *see also Cottle v. Plaid Inc.*, 536 F.Supp.3d 461 (N.D. Cal. 2021).

**c.** **Plaintiff has not alleged or proven that Passes' actions were "without permission" as required by subsections (1), (2), and (7)**

Plaintiff does not plausibly allege—let alone prove—that any of Passes' conduct was "without permission," which it is required to do in order to satisfy subsections 1, 2, and 7.  *In re Carrier IQ, Inc.*, 78 F.Supp.3d 1051, 1098 (N.D. Cal. 2015).  Plaintiff does not allege, nor does it show, that Passes circumvented any technological barriers or exceeded any contractual limitations  in accessing data. Passes accessed data through a publicly available API endpoint, which by its very nature is made open and accessible to the public for use.  Furthermore, subsequent access occurred through an endpoint expressly provided to Passes by the Plaintiff, indicating not only awareness but also explicit permission for access.  Plaintiff's own conduct in offering this endpoint undermines any claim that Passes engaged in unauthorized use.

Courts have generally interpreted "without permission" as "circumventing technical or code based barriers intended to restrict such access."  *Sunbelt Rentals, Inc. v. Victor*, 43 F.Supp.3d 1026, 1033 (N.D Cal. 2014);  *see also Facebook, Inc. v. Power Ventures, Inc.*, 844 F.Supp.2d 1025, 1037 (N.D. Cal 2012) rev'd in part on other grounds, 844 F.3d 1058 (9th Cir. 2016). Passes did not, and could not, circumvent any technological barrier because there was no technological barrier to overcome when it accessed public Famous Birthdays biographies or used Famous Birthdays Pro with authorized access.

First, the parties had a contract pursuant to which Famous Birthdays gave Passes credentials to access Famous Birthdays Pro.  Sweeney Decl., ¶6, Ex. A. Zhang Decl., ¶4, Ex. A. On or around February 29, 2024, Plaintiff granted Passes "a license to make non-public internal *use* of the data for Business Purposes of the Customer." (Sweeney Decl., Ex. A § 4.1 (emphasis added)). It further authorized Passes to "*use* the data in a manner that would otherwise be restricted by this Agreement where such

Data is, through no fault of Customer's, unprotectable under applicable law." (*Id.* (emphasis added)).

Second, no "permission" is needed to open and view publicly available websites. *See, e.g.*, Jakobsson Decl., ¶44. Passes' data access involved the use of standard API calls and gathering publicly accessible information, without any other techniques or efforts to bypass security measures. *See Id.*, ¶39. Passes did not overcome or breach barriers; rather, Passes engaged with open and available endpoints, adhering to standard protocols and without subverting protective mechanisms. *Id.* ¶45

Third, Plaintiff incorrectly alleges that the Famous Birthdays Pro login provided Passes with an account that could not perform more than 2,500 monthly looks, and the corresponding API lookups were restricted to 2,500 times per month. Motion at 19:1-4. At no point did Plaintiff place any restriction on the API's accessibility.

Fourth, Plaintiff's assertion that Passes overcame technological barriers by logging into its website and analyzing its *source code* to find an internal API call is baseless and nonsensical. The API in question is a public API, not proprietary source code. Public APIs are explicitly designed to be accessible and interacted with by third parties through standard API calls. Accessing such a public API does not involve any unauthorized digging into or manipulation of source code; rather, it adheres to the documented and intended usage of open endpoints *made available by the Plaintiff themselves*. (emphasis added).

Fifth, Plaintiff's lack of objection to the use of the API endpoint explicitly provided in the API documentation it shared with Defendant—specifically the api/clients/person endpoint—further demonstrates that access was not "without permission." After ceasing use of the rank graph endpoint, which Plaintiff contests, Defendant utilized the other endpoint from the provided documentation. This endpoint performed the same function as the rank graph endpoint but more

efficiently. Plaintiff's failure to object to the use of the api/clients/person endpoint, despite having knowledge of its usage through server logs, underscores that the data was being accessed with permission.

Nor did Passes ever "alter[], damage[], delete[], or destroy[]" Famous Birthdays' data in any way. Zhang Decl., ¶6. In other words, Famous Birthdays fails to allege or evidence an actionable intrusion. Passes simply gathered publicly available data via public tools and API documentation and tokens that Plaintiffs provided. Nothing more. Mere use of these tools is not enough to bring a claim. *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.* is instructive. 315 F.Supp.3d 1147, 1175 (C.D. Cal. 2018) There, the Court found that Plaintiff did not state a claim with respect to subsection (c)(1). Because the Court noted, "Defendants' bots do not actually alter, damage, delete, or destroy data on Ticketmaster's systems. Precisely the opposite is true: the fact that Ticketmaster's systems continued to deliver tickets to Defendants' bots shows that Ticketmaster's systems continued to function as intended, without damage or alteration, while the bots operated." *Id.*

Like *Ticketmaster*, the steps Passes took did not do anything to the data on Famous Birthdays' system. *See also McGowan v. Weinstein*, 505 F.Supp.3d 1000, 1020 (C.D. Cal. 2020) (Court found Plaintiff's argument that "taking ... data and transforming it in order to undermine ... [her] use of the data to publish her book" ***is*** akin to altering, damaging, deleting, or destroying data insofar as it constitutes an "injury to th[e] data in some way or another" *unconvincing*).

Lastly, Plaintiff's arguments rely heavily on misleading interpretations of case law, much of which is irrelevant or inapplicable to the issues at hand.

### d.    Plaintiff also fails to plausibly allege or demonstrate violations of section 502(c)(8)

Plaintiff's section 502(c)(8) claim fails because it has not plausibly alleged or demonstrated that Passes "introduce[d] any computer contaminant." Cal. Penal Code § 502(c)(8). Plaintiff's singular assertion that Defendants' use of "an automated

script" qualifies as a computer contaminant is as unconvincing as the case law it relies upon. Motion at 21:11-14.

The CDAFA's section on "computer contaminants" is "aimed at 'viruses or worms,' and other malware that usurps the normal operation of the computer or computer system." In *In re iPhone Application Litig.*, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) at *13.  One common type of computer virus is the "Trojan Horse," which secures the permission of the system owner by claiming to do one thing, such as launch a game or stream of digital media, and then does something different or extra after it has been accepted. *Flextronics Int'l, Ltd. v. Parametric Tech. Corp.*, 2014 WL 2213910, at *6 (N.D. Cal. May 28, 2014).  But Plaintiff offered no evidence and has not explained, nor could it, how a computer program is like a virus or worm.

Plaintiff's case cites are inapposite here.  For example, *In re Meta Healthcare Pixel Litig.*, 713 F.Supp.3d 650, 656-67 (N.D. Cal. 2024) concerns a "cookie" that is embedded on website visitors' devices and avoid detection.  The cookie then logs and tracks website visitors' actions and transmits that information to Meta.  This is unlike a basic script that scrapes a publicly available sitemap.  Additionally, *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F.Supp.3d 1056, 1074 (N.D. Cal. 2018)[1] concerns privacy tracking tools that were embedded in products and hidden from customers.  Again, Passes did not "embed" any technology on Plaintiff's website. And lastly, *Flextronics International, Ltd. v. Parametric Technology Corporation*, 2014 WL 2213910, at *5 (N.D. Cal., May 28, 2014) is equally irrelevant. That case was about hidden embedded technology that caused to be installed on Flextronics' computers, similar to a worm or virus. Plaintiff has not made similar allegations or proven the same regarding Passes, and it could not, because an automated script (i.e., a computer program) is not like a cookie, worm, virus, or hidden technology.

---

[1] Plaintiff's portrayal of this case is misleading, suggesting that the court denied the motion to dismiss on this ground, when in truth, the court granted it. *See id*. ("In sum, UNIL's CCDAFA claims are DISMISSED with leave to amend.")

**2.**     **Plaintiff Will Not Prevail on the Merits of Its Copyright Claim**

To state a claim for copyright infringement, Plaintiff must plausibly allege: (1) ownership of a valid copyright, and (2) copying of constituent parts of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Plaintiff's claims fall short of these requirements.

**a.**     **Plaintiff Cannot Establish Copying**

**(1)**     **Plaintiff Expressly Authorized Use of Its Data Under the March 1, 2024 Agreement Between the Parties**

Passes' access and use of Plaintiff's service was authorized per the parties' Services Agreement.  The Services Agreement expressly authorizes Passes to "use the data in a matter that would otherwise be restricted by this Agreement where such data is . . . unprotectable under applicable law." (Services Agreement § 4.1)).  Passes' use of data was exactly what the Services Agreement contemplated, and thus Passes did not infringingly copy any data because it had permission to use it.

**(2)**     **Plaintiff Fails the Substantial Similarity Test**

Alternatively, to prevail on a copyright infringement claim a plaintiff must prove substantial similarity between the protected elements of their work and the defendant's work. *Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022).  To determine substantial similarity, a plaintiff must satisfy both an "extrinsic" test and an "intrinsic" test. *Funky Films, Inc. v. Time Warner Entertainment, Inc.*, 462 F. 3d 1072, 1077 (9th Cir 2006).  The extrinsic test entails "an objective comparison of specific expressive elements" found within the works themselves, independent of the allegations in the Complaint. *See Cavalier v. Random House, Inc.,* 297 F. 3d 815, 822 (9th Cir. 2002).  The intrinsic test is a subjective comparison between the impression that each work creates. *Sony Pictures Ent., Inc. v. Fireworks Ent. Grp., Inc.*, 137 F.Supp.2d 1177, 1185–86 (C.D. Cal. 2001). Both Plaintiff's motion and

complaint fail to identify the protectable elements, if any, contained in its biographies, and Plaintiff fails to satisfy the substantial similarity test.

(a)     Plaintiff's Factual Data Contained In Its Biographies are Not Protectable

"As a matter of law, certain elements of any given work are inherently non-protectable.  For example, facts are not protectable because they cannot be 'created' by a copyright author; instead, they are objective truths which exist in the public domain and can be discovered and used by anyone." *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F.Supp.3d 1035, 1046 (S.D. Cal. 2023)(internal citations omitted). "Similarly, expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law." *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003).

Here, Plaintiff's biographies are factual in nature and publicly available. Plaintiff simply restates objective truths that it discovered but did not create. *See Feist*, 499 U.S. at 345.  The public is allowed to use facts without infringing.  *See Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003).  It follows that Passes' works can't be a derivative work if the only elements that are present are not subject to copyright protection.

(b)     Even if Plaintiff's Factual Data Contained In Its Biographies are Protectable, They Do Not Pass The Substantial Similarity Test

Even if Plaintiff satisfies the originality, Passes does not infringe Plaintiff's factual compilation because the information on Passes Wiki was not virtually identical to Plaintiff's biographies. "The copyright [protection] in a compilation is thin." *Feist*, 499 U.S. at 349–50. *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1178 (C.D. Cal. 2001), aff'd in relevant part, dismissed in part, 90 Fed. Appx. 496 (9th Cir. 2003), as amended on denial of reh'g (Mar. 9, 2004) ("[w]here a copyrighted work is composed largely of 'unprotectable' elements ... it receives a

'thin' rather than a 'broad' scope of protection."). When a work as a whole is entitled to thin protection but the facts within it are unprotected, others may copy those facts, so long as the competing work does not feature the same selection and arrangement of those facts. *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F.Supp.3d 1035, 1048 (S.D. Cal. 2023)(internal citations omitted).

"Moreover, when a work is entitled to "thin" protection, courts typically require "virtual identity" rather than "substantial similarity" to find copyright infringement." *Id*.; *see Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 21 (2021) ( citing *Experian Information Solutions, Inc. v. Nationwide Marketing Servs. Inc.*, 893 F.3d 1176, 1186 (C.A.9 2018) ("In the context of factual compilations, ... there can be no infringement unless the works are virtually identical" (internal quotation marks omitted)). This standard requires "verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed." *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F.Supp.3d 1035, 1048 (S.D. Cal. 2023) Additionally, when a work is entitled to "thin" protection, courts generally look at each work in its entirety to determine whether the overall selection, arrangement, and coordination of facts is virtually identical. *See Satava*, 323 F.3d at 812

Here, a comparison of the relevant works shows the information on Passes Wiki is not virtually identical to Plaintiff's biographies. Nor could Passes' biography narratives have been virtually identical to Famous Birthday's factual biography narratives because they were composed via ChatGPT. Zhang Decl. ¶15. A side by side comparison of Passes' and Plaintiff's works will show that Passes has selected more facts to include and has arranged those facts differently. *Cf., e.g. Britton Decl., Exs. G and H; see Feist*, 499 U.S. at 349–50 (allowing copying of facts if the arrangement and selection is not identical) ; *see also Experian*, 893 F.3d at 1185 ("[A] compiler may freely use the facts contained in a compilation when preparing a competing work, as long as the competing work does not exhibit the same selection or arrangement."). Plaintiff points to usage of the "same obscure fact" to show

copying (Compl. ¶50), but that fails to prove anything. *See Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F.Supp.3d 1035, 1046 (S.D. Cal. 2023).

### 3.    Plaintiff is Unlikely to Prevail on the Merits of Its UCL Claim

California's unfair competition law (UCL), California Business and Professions Code section 17200, prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel–Tech Comms. Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).

Plaintiff's UCL claim is predicated on the same conduct as the copyright and CDAFA claims.  Since Plaintiff is unlikely to prevail on either of those claims, its UCL claim fails as well.

### C.    Passes' Voluntary Cessation Renders an Injunction Unnecessary and the Motion moot

Passes took voluntary action to take down Passes Wiki. *See* Guo Decl. ¶¶10-14.  These biography pages are no longer in public view and Passes has no interest in returning the Passes Wiki biography pages to public view.  *Id*. Although a defendant "cannot automatically moot the [need for injunctive relief] simply by ending its unlawful conduct once sued," it can by showing "the allegedly wrongful behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000).  The Passes Wiki biography pages are not core to Passes' business. Guo Decl. ¶10. In any event, they have been taken down and removed from public view with no intent to resume.  Guo Decl. ¶12, 14.  Plaintiff has not, and cannot, point to any evidence that future injury may occur.  *See David v. CBS Interactive Inc*., 2013 WL 12128804, at *1 (C.D. Cal. Feb. 19, 2013) (denying motion for preliminary injunction, in part, because the

"Court has no reason to believe" that there is "at least some evidence that future infringement may occur."); *see also DealDash Oyj v. ContextLogic Inc.*, 2018 WL 3820654, at *2-3 (N.D. Cal. Aug. 10, 2018) (denying Plaintiff's motion for preliminary injunction because Defendant ceased its alleged infringing activity and "it cannot reasonably be expected that defendant will again use [Plaintiff's] mark.") (internal quotes omitted).

### D.    The Balance of Hardships Does Not Tip In Plaintiff's Favor

The court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). The harm to Defendants would be significant.

First, the relief requested is so ambiguous and vague that it is entirely unclear what Defendants are asked to do. *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 2020 WL 3871451, at *3 (C.D. Cal. July 9, 2020), *aff'd* 2021 WL 3702005 (9th Cir. Aug. 20, 2021) (in denying an injunction, the Court noted that "[i]t is not clear what additional effort Zazzle should undertake, or if that effort is reasonable or even possible.")

At a minimum, an injunction would place a significant burden on Defendants, requiring them to first interpret the scope and meaning of the plaintiff's requested relief. This would then compel Defendants to review their entire "database" of information and conduct a substantial similarity analysis to determine whether each item mirrors Plaintiff's biographies. Such an undertaking imposes a substantial and unwarranted burden on Defendants. In contrast, there is no hardship on Plaintiffs, as its biographies consist of factual information that is unprotectable and readily available from numerous other sources. As but one example, Plaintiff's bio of Curtis Jackson reads, "After his mother died, he moved in with his grandparents and his eight aunts and uncles. He competed in the Junior Olympics as a boxer." Compl. ¶57. This exact same information can be found online at HipHopGoldenAge.com: "After his mother's death, Jackson moved into his grandparents' house with his eight

aunts and uncles." *See* https://hiphopgoldenage.com/artists/50-cent/. Followed by "During the mid-1980s, he competed in the Junior Olympics." *Id.*

The Plaintiff's assertion that the balance of hardships tips in its favor is unpersuasive, as it primarily relies on claims of irreparable harm, which is a separate and distinct element of the preliminary injunction analysis.

## E.     A Preliminary Injunction Is Not In The Public Interest

The public interest weighs strongly against injunctive relief that would impact numerous non-parties.  There is no public interest in enjoining the use of public information. *Arenas v. Shed Media U.S. Inc.*, 881 F.Supp.2d 1181, 1195 (C.D. Cal.), aff'd sub nom. *Arenas v. Shed Media US, Inc.*, 462 F. App'x 709 (9th Cir. 2011) (denying motion for preliminary injunction, in part, because "[a]lthough the public also has an interest in intellectual property protection, that interest is curtailed where, as here, any purported intellectual property interest is highly attenuated."  An injunction here would simply prevent the public from being able to read facts about different celebrities. And these facts are not copyrightable. Indeed the proposed injunction implicates First Amendment rights, as it restricts the free exchange of publicly available facts.  *Sammartano v. First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002).

Plaintiff's sole argument is that an injunction serves the public interest by upholding intellectual property protections. Motion at 31:18-32:3. While this is undeniably significant, courts have determined that it is not the decisive factor when the primary issue is a contractual dispute, especially if monetary damages are deemed sufficient. *Cause & FX Ltd. v. Saban Films, LLC*, 2021 WL 6104414 at *4 (C.D. Cal. Nov. 10, 2021). Thus, the public interest weighs against the issuance of an injunction.

## F.     Plaintiff's Requested Relief Is Not Narrowly Tailored and Is Therefore Impermissible

The scope of Plaintiff's request is entirely overbroad. The Ninth Circuit has held that "an injunction must be narrowly tailored ... to remedy only the specific

harms shown by the plaintiffs, rather than 'to enjoin all possible breaches of the law.' " *Price v. City of Stockton,* 390 F.3d 1105, 1117 (9th Cir. 2004). Additionally, an injunction must "describe in reasonable detail ... the act or acts sought to be restrained." Fed. R. Civ. P. 65(d). Plaintiff's requested relief do not provide any guidance to Defendants, leaving Defendants guessing how to apply the proposed injunction.[2] For example, it is wholly unclear what "marketing materials," "database(s)," and "any internal company use of any kind" encompass, and what exactly Defendants are to do. Motion at 2:14-20. Moreover, it's not clear what "Famous Birthdays' copyrighted data" means and whether it's even protected. Plaintiff misleadingly insinuates its images are copyrighted data, yet nowhere, not in its complaint nor its motion, does Plaintiff assert that it owns any images. Indeed it cannot because it doesn't have any copyrighted images. *See e.g.,* Compl. ¶21 ("The 2018 and 2021 registrations are for Famous Birthdays' complete collection of *written* biographies.") (emphasis added). As such, Defendants cannot undertake such an ambiguous task. *Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 2018 WL 836276, at *6 (C.D. Cal. Feb. 8, 2018).

## V.  CONCLUSION

Plaintiffs' motion should be dismissed as moot. If the Court does not dismiss it as moot, then the motion should be denied.


Dated:  November 12, 2024          Respectfully submitted,

By: */s/ Neel Chatterjee*

---

[2] Moreover, without a precise injunction, there is no way to form what the appropriate bond would be.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NEEL CHATTERJEE (SBN 173985)
*NChatterjee@goodwinlaw.com*
SHARON R. SMITH, (SBN 221428)
*SharonSmith@goodwinlaw.com*
MEGAN D. BETTLES (SBN 328161)
*MBettles@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendants
PASSES, INC. and LUCY GUO

## **LOCAL RULE 11-6.1 CERTIFICATION**

The undersigned counsel of record for Defendants PASSES, INC., ("Passes") and LUCY GUO ("Ms. Guo") certifies that this memorandum of points and authorities contains 6,873 words, which complies with the word limit set forth in Local Rule 11-6.1.

/s/ Neel Chatterjee
NEEL CHATTERJEE

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system on **November 12, 2024**.  I further certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **November 12, 2024**.

_/s/ Draft_

NEEL CHATTERJEE
