RACHEL WALSH (SBN 250568)
RWalsh@goodwinlaw.com
MEGAN D. BETTLES (SBN 328161)
MBettles@goodwinlaw.com
**GOODWIN PROCTER LLP**
525 Market St
San Francisco, CA 94105
Tel.: (415) 733-6000
Fax: (415) 677-9041

THERESA A. SUTTON (SBN 211857)
TSutton@goodwinlaw.com
FRED FEYZI (SBN 343538)
FFeyzi@goodwinlaw.com
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel. (650) 752-3100
Fax: (650) 853-1038

Attorneys for Defendants
PASSES, INC. and LUCY GUO

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FAMOUS BIRTHDAYS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>PASSES, INC., a Delaware corporation; and LUCY GUO, an individual,<br><br>Defendants. | Case No. 2:24-cv-08364-CBM-SSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Date:    September 2, 2025<br>Time:    10:00 A.M.<br>Ctrm.:   8-D<br>Judge:   Hon. Consuelo B. Marshall<br>FAC Filed:   June 27, 2025 |

# TABLE OF CONTENTS

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| BACKGROUND | 2 |
| A. The Parties | 2 |
| B. Parties Enter Into Services Agreement | 2 |
| C. Defendants' Use of Famous Birthdays Pro | 3 |
| D. The Court's Order | 4 |
| ARGUMENT | 5 |
| A. Legal Standard | 5 |
| B. Plaintiff Failed to State a Claim for Violation of Penal Code § 502(c) | 5 |
| 1. Plaintiff Did Not Allege that Defendants Acted Without Permission | 5 |
| 2. Exceeding Authorization Does Not Satisfy Section 502(c) | 8 |
| 3. Plaintiff Also Fails To Plausibly Allege Violations Of Section 502(c)(8) | 9 |
| CONCLUSION | 12 |

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 5, 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................... 5, 6

*Chavez v. Wynar*,
   421 F. Supp. 3d 891 (N.D. Cal. 2019) ............................................................ 5

*Cline v. Reetz-Laiolo*,
   329 F. Supp. 3d 1000 (N.D. Cal. 2018) .......................................................... 8

*Doe v. Meta Platforms, Inc.*,
   690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................................................. 10, 11

*Facebook, Inc. v. Sluchevsky*,
   2020 WL 5823277 (N.D. Cal. Aug. 28, 2020) ............................................ 6, 7

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022) .............................................................. 7, 8, 11

*In re Google Android Consumer Priv. Litig.*,
   2013 WL 1283236 (N.D. Ca. Mar. 26, 2013) ................................................ 6

*In re iPhone Application Litig.*,
   2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................................. 10

*Meta Platforms, Inc v. Social Data Trading Ltd.*,
   2022 WL 18806267 (N.D. Cal. Nov. 15, 2022), *report and
   recommendation adopted*, 2022 WL 18806265 (N.D. Cal. Dec. 8,
   2022) ............................................................................................................ 7, 8

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ........................................................................ 1

*In re Oliveras*,
   103 Cal. App. 5th 771, 781-782 (2024). ........................................................ 5

*United States v. Nosal*,
    844 F.3d 1024 (9th Cir. 2016) ................................................................................ 9

*Van Buren v. United States*,
    593 U.S. 374 (2021) ................................................................................... 8, 9

**Statutes**

Cal. Pen. Code § 502(c)(1)-(2), (4), (6)-(7) ............................................................... 4

Cal. Penal Code § 502(b)(12) ................................................................................... 9

California Penal Code Section 502(c) .............................................................. *passim*

Penal Code § 502(c)(8) ............................................................................... 9, 10, 11

# INTRODUCTION

In its May 23, 2025 Order, the Court granted-in-part Defendants Passes, Inc. and Lucy Guo's ("Defendants") Motion to Dismiss Plaintiff Famous Birthday's Second Claim for Relief pursuant to California Penal Code Section 502(c). The Court found that Plaintiff failed to state a claim because (1) Passes had access to Plaintiff's data as a result of the parties' services agreement and (2) Plaintiff's claim was based only on the alleged improper use of data to which Plaintiff granted Passes access. The Court granted Plaintiff leave to amend its claims under subsections (1), (2), (4), (6), and (7) to "allege facts that Defendants engaged in the alleged conduct 'without permission' such as by circumventing technical or code-based barriers." Dkt. 60 at 14.

Plaintiff has failed to follow the Court's direction, and has still failed to assert a viable claim under Section 502(c). In response to the Court's Order, Plaintiff sprinkled in an allegation throughout the Amended Complaint that Defendants acted without permission to "circumvent technical barriers" by allegedly digging around in Plaintiff's source code to locate internal API calls. Dkt. 66 ¶191.[1] The basis for this allegation appears to be a misrepresentation of Passes' response to an interrogatory Plaintiff propounded. Plaintiff alleges that Defendants "admitted" or "conceded" in their interrogatory responses that Passes dug around in Plaintiff's source code to locate internal API calls. This allegation is demonstrably false; Passes explained that access to the internal API can be accomplished "without needing access to the underlying code." Declaration of Theresa A. Sutton in Support of Defendants' Request for Judicial Notice in Support of Defendants' Motion to Dismiss First Amended Complaint ("Sutton Decl."), Ex. 1 at 8, 16.

Despite the Court's clear instructions on how to remedy its insufficient

---

[1] As explained in Defendants' concurrently-filed Request for Judicial Notice, the Court may review and consider under the incorporation by reference doctrine Passes' interrogatory responses in ruling on the instant Motion. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

pleading, Plaintiff's Amended Complaint fails to allege facts sufficient to show that Passes acted without permission. Plaintiff's Section 502(c) claim should be dismissed with prejudice because Famous Birthdays cannot plausibly allege facts to meet the "without permission" standard.

## BACKGROUND

### A. The Parties

Defendant Lucy Guo is the founder and CEO of Defendant Passes, Inc. ("Passes"). Ms. Guo founded Passes in 2022. FAC, ¶39. Passes is a social content platform that enables content creators to monetize their brand and scale their businesses. *Id*. "The platform facilitates a variety of income sources for creators, including 'membership communities, live streaming, one-on-one calls and more.'" *Id*.

Plaintiff Famous Birthdays collects publicly available information (including celebrity birthdates and biographical facts), images, and videos and posts them on its website for users to view. *Id*. ¶26. Plaintiff also offers a subscription service called Famous Birthdays Pro, which provides paying members a license to use Plaintiff's catalog and access to back-end analytics related to its public profiles. *Id*. ¶3.

### B. Parties Enter Into Services Agreement

On or around February 29, 2024, the parties executed the Famous Birthdays Pro subscription agreement (the "Agreement"). *Id*. ¶43, Ex. A ("Ex. A"). Passes paid Plaintiff $5,000 each month in exchange for subscription services and a non-exclusive license to use data and information available through the service. *Id*., §2.5. Plaintiff terminated the Agreement on August 21, 2024. *Id*., §§3.1, [3.2]; FAC, ¶82. In exchange for $5,000 per month (Ex. A, §2.5), Passes received services including:

> 2.2 **Rank Graph Search**. Famous Birthdays shall provide Customer with 2,500 searches per month of historical rank graphs for creators profiled on the Famous Birthdays platform[.]

    2.3 **Report Search**. Famous Birthdays shall provide Customer with 100 Report Searches per month with up to 50 records on each report[.]

    2.4 **API[2] Access**. Famous Birthdays shall provide customer with access to the Famous Birthdays Pro API: Which includes the same data and allotments that are available via the Famous Birthdays Pro dashboard[.]

*Id.*, §§2.2-2.4. The Agreement also included a license to Plaintiff's "intellectual property":

> The data and information made available through the Services (the "Data") are the intellectual property of Famous Birthdays. Famous Birthdays hereby grants Customer a license to make non-public internal use of the data for Business Purposes of the Customer for the duration of the term of this Agreement. Customer shall not transfer, sell, or publicly display the data. Notwithstanding the foregoing, Customer may use the data in a matter that would be otherwise be restricted by this Agreement where such Data is, through no fault of Customer's, unprotectable under applicable law.

*Id.*, §4.1. The Agreement contains a limitation on each parties' liability arising out of the Agreement:

> To the maximum extent permitted by applicable law, in no event shall either party be liable for any lost profits or for any indirect, incidental, special or consequential damages arising out of or related to this Agreement, regardless of whether advised of the possibility of such damages.

*Id.* §6.

### C. Defendants' Use of Famous Birthdays Pro

According to the FAC, Defendants used the Plaintiff-provided login credentials to access and "scrape" bios, then Passes used ChatGPT to "rework the

---

[2] Famous Birthdays' API is another means to access Famous Birthdays' data.

language" and create Passes' bios. *Id*. ¶¶9, 13, 14, 72, 77, 79.

### D. The Court's Order

On December 12, 2024, Defendants filed a Motion to Dismiss Plaintiff's complaint. Dkt. 44. Plaintiff opposed the Motion. Dkt. 53.

On May 23, 2025, the Court granted-in-part Passes' Motion to Dismiss Plaintiff's Second Claim for Relief based on the alleged violation of Penal Code Section 502(c) (the California Comprehensive Computer Access And Fraud Act or "CDAFA").

Plaintiff asserted claims pursuant to Subsections 1, 2, 4, 6, 7, and 8 of the CDAFA. The Court dismissed with leave each subsection (with the exception of subsection (8)) on the ground that Plaintiff failed to allege facts showing Passes had acted without permission:

> Because the Complaint alleges facts demonstrating Defendants had access to Plaintiff's data based on the parties' services agreement, and because Plaintiff's CDAFA claim under Cal. Pen. Code § 502(c)(1)-(2), (4), (6)-(7) is based on Defendants' improper use of the data that Plaintiff alleges it gave Defendants access to, Plaintiff fails to state a claim for violation of Cal. Pen. Code § 502(c)(1)-(2), (4), (6)-(7).

The Court granted Plaintiff leave to amend the CDAFA claim to allege facts showing Passes engaged in the alleged conduct without permission "such as by circumventing technical or code-based barriers." Dkt. 60 at 14. Plaintiff filed an amended complaint on June 27, 2025. Dkt. 66. Plaintiff added allegations that "Defendants could use the API calls" limited to input calls for data, as provided in the Services Agreement signed by the Parties. *Id*. at ¶47. Plaintiff further alleged that undisclosed "technical barriers" should have prevented Passes from accesses historical rank graph data and other information. *Id*. at ¶¶59-63.

# ARGUMENT

## A. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must meet Rule 8(a)'s pleading requirements and allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). Plaintiff's amended CDAFA claim fails to meet this standard, and this claim should be dismissed with prejudice.

## B. Plaintiff Failed to State a Claim for Violation of Penal Code § 502(c)

### 1. Plaintiff Did Not Allege that Defendants Acted Without Permission

In its Order, the Court dismissed most of Plaintiff's CDAFA claim finding Plaintiff failed to allege Defendants acted without permission by, for example, circumventing technical or code-based measures. Plaintiff's new allegations fail to remedy this fatal defect. Dkt. 60 at 14. Indeed, Defendants' alleged "conduct does not fall within the scope of conduct the Legislature sought to address" and, for that reason, must be dismissed with prejudice. *In re Oliveras,* 103 Cal. App. 5th 771, 781-782 (2024).

In response to the Court's Order requiring factual allegations sufficient to show that Defendants' alleged access to an available API was "without permission," Plaintiffs alleged, without factual support, that Defendants "circumvented the technological and contractual limitations inherent in the Services Agreement." Dkt. 66 ¶ 9. To bolster its conclusory allegation, Plaintiff attempts to rely on discovery in

this Action, falsely asserting that Defendants admitted to accessing Plaintiff's source code in order to pull the rank graph API call. *Id.* ¶¶10, 70, 191, 201. *Chavez v. Wynar*, 421 F. Supp. 3d 891, 898 (N.D. Cal. 2019) (holding that the court "need not accept as true allegations contradicted by judicially noticeable facts…nor assume the truth of legal conclusions merely because they are cast in the form of factual allegations."); *see also Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557 (finding "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to state a claim for relief). Defendants' discovery response detailed just the opposite: "the rank graph API endpoint can be readily observed by *anyone* … without needing access to the underlying code that triggers these interactions." Sutton Decl., Ex. 1 at 8, 16. (emphasis added). *See In re Google Android Consumer Priv. Litig.*, 2013 WL 1283236, at *11-12 (N.D. Ca. Mar. 26, 2013) (finding that plaintiff failed to allege that defendants acted "without permission" in including tracking codes in the program that did not render ineffective any barriers by plaintiffs to prevent access to the plaintiffs' PII); *cf. Power Ventures,* 2010 WL 3291750, at *12 (finding that the alleged use of tools to circumvent plaintiff's IP addressing blocking efforts could be a violation of CDAFA). Plaintiff has not adequately alleged that Defendants' actions "render[ed] ineffective any barriers the Plaintiffs might wish to use to prevent access" to their API, because no such barriers existed.

Nonetheless, Plaintiff alleges in its First Amended Complaint that this case is similar to *Facebook, Inc. v. Sluchevsky*, 2020 WL 5823277, at *7 (N.D. Cal. Aug. 28, 2020), where Defendants used "malicious extensions and Java Code to access and scrape data from Plaintiff's HTTP servers." *Id*. at *7; FAC ¶192. In *Sluchevsky*, the defendants accessed Facebook's servers without authorization from Facebook or its users by deceiving Facebook users into installing "malicious extensions" that contained computer code designed to "compromise[]" the user's browser. *Id*. at *1. Once a user's browser was compromised, "when the app user visited the Facebook site and accessed their account … Defendants used the compromised browser as a

proxy to access Facebook's computers without authorization." Sutton Decl., Ex. 2 at 13. The defendant then used its unauthorized access to send commands to Facebook's servers while the scripts inserted advertisements into the user's news feed. *Sluchevsky*, 2020 WL 5823277, at *11. The facts here are not analogous. Here, as the Court found in its May 2025 Order, by contract, Plaintiff **_granted_** Defendants access to its system, (Dkt. 60); and thereby, Defendants were able to access the internal API as they were permitted to do under the agreement, and without using "malicious browser extensions" or "compromising another user's browser." Defendants did not "insert" anything into Plaintiff's system or network, nor does Plaintiff make that allegation. And, to the extent Defendants scraped data, as discussed above, data scraping is not per se unlawful, and Plaintiff has not alleged otherwise. *See hiQ Labs, Inc.*, 31 F.4th 1180, 1186 n.4 (9th Cir. 2022) (describing scraping as the automated extraction of data from websites).

Plaintiff alleges in its First Amended Complaint that *Meta Platforms Inc. v. Social Data Trading Ltd.* is another example of a case where other courts have found CDAFA violations in similar circumstances, 2022 WL 18806267 (N.D. Cal. Nov. 15, 2022), *report and recommendation adopted*, 2022 WL 18806265 (N.D. Cal. Dec. 8, 2022), but the invasive nature of the *Facebook* and *Meta* defendants' scripts far exceed Passes' activity here. In *Social Data Trading Ltd.*, Meta moved for default judgment and used defendant's scraping activity as a basis for the court to assert personal jurisdiction over Russia-based actors. 2022 WL 18806267, at *1. Whether the defendant's activity amounted to a violation of Section 502(c) was not at issue. Though the court did not reach the merits, the facts would not have supported Plaintiff here. *Id.* at 4. Social Data was alleged to have set up thousands of automated Instagram accounts. *Id.* at 3. Meta sent Social Data a cease and desist letter and blocked its accounts, but Social Data persisted in scraping restricted Instagram data after having their access revoked. Sutton Decl., Ex. 3 at 3-4, 16-17. Unlike Passes, Social Data used fake accounts to evade Meta's security systems. *Id.* at 2. Meta

alleged that the conduct was deceptive, persistent, and *interfered with the integrity of the platforms*. *Soc. Data Trading Ltd.*, 2022 WL 18806267, at *4. These facts do not exist here where Plaintiff granted Defendants access to their data and did not revoke this access.

### 2. Exceeding Authorization Does Not Satisfy Section 502(c)

Having failed to sufficiently allege Defendants' conduct was without permission, Plaintiff is left to argue that Defendants exceeded authorization under the Services Agreement.

The U.S. Supreme Court addressed a similar issue in *Van Buren v. United States*, 593 U.S. 374 (2021).[3] The *Van Buren* court found that either a user is authorized to access a computer (and access data) or it is not. *Id.* at n.9. "Authorization" (or "permission") is not purpose-based. *Id.* Once Passes entered its Plaintiff-provided credentials, which Plaintiff admits "granted Passes access to Famous Birthdays Pro," (FAC, ¶43), Passes authenticated its right—*i.e.*, had permission—to access the Famous Birthdays Platform where it made "data and information [ ] available through the Services[.]" Ex. A, §4.1. The question raised in *Van Buren*, which also is at issue here, is whether—after accessing the computer with permission—the officer (or Passes) "then obtain[ed] information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Van Buren*, 593 U.S. at 396.

Plaintiff does not allege that Passes obtained information that was off limits to it. Instead, Plaintiff alleges that Defendants allegedly scraped biographies "in violation of Famous Birthdays and Famous Birthdays' Pro's Terms of Service, to locate Famous Birthdays' internal API calls, that they had no authorization to access." FAC, ¶¶9, 180. Elsewhere, however, Plaintiff admits that Defendants were granted access to the biographical information on Plaintiff's site. Unauthorized ***use***

---

[3] Courts have recognized that the Cal. Penal Code § 502(c) is the CFAA's state-law counterpart. *See, e.g.*, *hiQ Labs*, 31 F.4th at 1194 n.11.

- 8 -

of information is not a basis for a Section 502(c) violation. *See Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1050 (N.D. Cal. 2018), citing *United States v. Nosal*, 844 F.3d 1024 (9th Cir. 2016) ("As *Nosal I* made clear, the CFAA was not intended to cover unauthorized use of information. Rather, under §1030(a)(4), *Nosal* is charged with unauthorized access—getting into the computer after categorically being barred from entry.")(emphasis in original). Such use is not at issue here.

Similarly, in *Van Buren,* a police officer had authorization as part of his job to access a license plate database for law enforcement purposes. The officer accessed the license plate database to provide information to an acquaintance about a person he met in a bar, which was a personal favor. The *Van Buren* court found, not only did the officer not access the database without authorization "[b]ecause the officer was entitled to access the license plate database," but he also "did not 'excee[d] authorized access'" under the CFAA, despite having "obtained information from the database for an improper purpose." *Van Buren,* 593 U.S. at 396. Notably, the *Van Buren* court noted, "[T]he Government's interpretation of the statute would attach criminal penalties to a breathtaking amount of commonplace computer activity." *Id.*, at 394. Here, Passes was entitled to access Plaintiff's "data and information" pursuant to the Agreement. Ex. A, §§ 2.4, 4.1. That Defendants then allegedly "copied Famous Birthdays' biographies on its website and ma[de] them accessible to residents of California," (FAC, ¶24) does not mean Passes' activity was "without permission" for purposes of Section 502(c).

### 3. Plaintiff Also Fails To Plausibly Allege Violations Of Section 502(c)(8)

Plaintiff's amended "facts" fail to plausibly allege a violation of Section 502(c)(8). Subsection (8) prohibits "[k]nowingly introduc[ing] any computer contaminant into any computer, computer system, or computer network." Cal. Penal Code § 502(c)(8). A "computer contaminant" is "any set of computer instructions that are designed to modify, damage, destroy, record, or transmit information within

a computer, computer system, or computer network without the intent or permission of the owner of the information." Cal. Penal Code § 502(b)(12). Plaintiff's amended allegations do not meet the statutory definition of a computer contaminant and, for that reason, Defendants have not violated subsection (8).

To bolster its claim that Defendants introduced a computer contaminate into Famous Birthdays' computer network, Plaintiff alleges that Defendants' API "tricked the system into believing Passes was [] a human Famous Birthdays employee." Dkt. 66 ¶194. Plaintiff does not allege how "tricking" its "system" means that Defendants "introduce[d a] computer contaminant" into "Famous Birthdays' networks." Cal. Penal Code § 502(c)(8); FAC ¶¶ 194, 195, 201.

The idea that "tricking" the system is akin to "introducing a contaminant" must be rejected. Indeed, the plain text and relevant caselaw emphasize that subsection (8) is aimed at malware, such as "viruses or worms," that interfere with the normal operation of a system. *See In re iPhone Application Litig.*, 2011 WL 4403963, at *12 (N.D. Cal. Sept. 20, 2011) ("the section on 'computer contaminants' appears to be aimed at 'viruses or worms,' and other malware that usurps the normal operation of the computer or computer system."); *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1083 (N.D. Cal. 2023) (same).

In its Amended Complaint, Plaintiff merely claims Defendants accessed a public-facing API using credentials they were provided. FAC ¶ 5. There are no claims of malware, no revocation of access, no evasion of technical safeguards, and most importantly, *no interference with Plaintiff's systems*, which is central to the rationale in a case which Plaintiff relies on, *Social Data Trading Ltd.* (where the alleged harm caused by the defendant's conduct was interference with the plaintiff's products). Automated queries to an available API are not analogous to breaking into private systems or introducing malicious code. Here, Plaintiff does not allege that Defendants' script modified or corrupted any data, disrupted the operation of its systems, or introduced malicious or harmful code in any technical sense. Rather,

Plaintiff concedes that the script was only able to retrieve data by logging in through an account Defendants had access to under a services agreement. *See* FAC ¶ 194. That account, by default, included access to the internal API. Using a credentialed account to retrieve information via the API as designed does not constitute introducing a "computer contaminant." That is, it is not malware, and it does not alter, record, or destroy anything within Plaintiff's systems. Nor does Plaintiff allege any facts suggesting that Defendants' conduct interfered with the operation of its systems or caused any damage.

Scraping, as alleged here, is not per se unlawful. It involves extracting publicly available data and organizing it for further use or analysis. *See hiQ Labs*, 31 F.4th at 1186 n.4 (describing scraping as the automated extraction of data from websites). The Ninth Circuit has repeatedly emphasized that the Computer Fraud and Abuse Act (CFAA), on which California's CDAFA is modeled, is "best understood as an antiintrusion statute and not as a 'misappropriation statute[.]'" *hiQ Labs*, 31 F.4th at 1196. For that reason, Section 502(c)(8) is not aimed at disagreements over how data may be accessed or used.

Indeed, courts have rejected attempts to expand Section 502(c)(8) to cover software tools that do not cause damage or interference. *See Meta*, 690 F. Supp. 3d at 1083 (dismissing Section 502(c)(8) claim, in part, where plaintiff failed to allege the alleged "contaminant" – Meta Pixel software for collecting user data – usurped normal operation of the device or system).

Plaintiff's effort to characterize ordinary API usage as the introduction of a "computer contaminant" is not only unsupported by the statute but would render § 502(c)(8) boundless. It would transform any automated access to data, no matter how routine or authorized, into a felony offense. That is not the law, and Plaintiff's claims under Section 502(c)(8) should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant the Motion and dismiss Count II of the FAC.

Dated: July 31, 2025

Respectfully submitted,

By: /s/ *Theresa A. Sutton*
RACHEL WALSH (SBN 250568)
*RWalsh@goodwinlaw.com*
THERESA A. SUTTON (SBN 211857)
*TSutton@goodwinlaw.com*
MEGAN D. BETTLES (SBN 328161)
*MBettles@goodwinlaw.com*
FRED FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
**GOODWIN PROCTER LLP**

Attorneys for Defendants
PASSES, INC. and LUCY GUO

## **LOCAL RULE 11-6.1 CERTIFICATION**

The undersigned counsel of record for Defendants Passes, Inc., ("Passes") and Lucy Guo ("Ms. Guo") certifies that this memorandum of points and authorities contains 3,381 words, which complies with the word limit set forth in Local Rule 11-6.1, and complies with the limit set by the Court's Standing Order dated October 23, 2024. (Dkt. 19, §7(c).)

                                                          */s/ Theresa A. Sutton*
                                                            Theresa A. Sutton

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system on **July 31, 2025**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **July 31, 2025**.

                                                           */s/ Theresa A. Sutton*
                                                            Theresa A. Sutton

GOODWIN PROCTER LLP
ATTORNEYS AT LAW